**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. GLR-23-0353 |
| ERIC TATAW | * | |

\* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S MOTION _IN LIMINE_ TO PRECLUDE THE USE AT TRIAL OF
CERTAIN PHONE CALLS RECORDED BY GOVERNMENT WITNESS B.T. AND
REQUEST FOR A HEARING**

Defendant, Eric Tataw, by and through his undersigned counsel, David Walsh-Little, hereby moves this Honorable Court, pursuant to 18 U.S.C. § 2511 and 18 U.S.C. § 2515, to preclude the Government from using the substance of four phone calls recorded by a Government witness, B.T., and all derivate evidence from those phone calls during the trial of this matter, and in support thereof states as follows:

**PROCEDURAL HISTORY**

Eric Tataw was charged initially by criminal complaint on September 1, 2023. ECF No. 1. A seven count Indictment was filed on October 3, 2023 charging Mr. Tataw with two counts of Bank Fraud in violation of 18 U.S.C. § 1344, Money Laundering in violation of 18 U.S.C. § 1957, Wire Fraud in violation 18 U.S.C. § 1343, Aggravated Identity Theft in violation of 18 U.S.C. § 1028A, and two counts of Obstruction of Justice in violation of 18 U.S.C. § 1503.

The Indictment alleges that Mr. Tataw, through a media company entitled National Telegraph, LLC, submitted fraudulent loan applications to certain federal programs set up to provide relief to small businesses during the COVID-19 pandemic.

Mr. Tataw had his initial appearance on September 1, 2023 and was temporarily detained until he was released with conditions on September 8, 2023.  ECF No. 15.  He was later detained after a hearing on June 11, 2025 and has been continuously incarcerated since that date.  At his arraignment on the pending indictment, Mr. Tataw entered not guilty pleas to all counts.  ECF No. 25.

A motions hearing was conducted on March 13, 2026.  A pre-trial conference is scheduled for April 13, 2026 and a jury trial is presently scheduled for April 20, 2026.

## RELEVANT FACTS

At some point before testifying before the Grand Jury in this case, Government witness B.T. called a close relative of Eric Tataw, C.T.  He instructed C.T. to record the phone call which C.T. proceeded to do.  Portions of the conversation are in Pidgin, a copy of the Government's translation of the call is attached as Exhibit No. 1.  During the call, Government witness B.T., told C.T. that "if he doesn't want to die …Eric's life is in my hands." *Exhibit No. 1, pp. 1-2*.  "I need $15,000 in cash before 2 p.m. tomorrow.  *I have a recording of everybody*." *Id*, p.2 (Emphasis added)."   In furtherance of B.T.'s efforts to extort money from Mr. Tataw, B.T. states, "Tell him (meaning Eric Tataw) or take a testimony for everybody.  And I have the proof everything." *Id*., p.2.  B.T. again repeats, "If you want to win this thing, I need $15,000 before 2 p.m. tomorrow." *Id*, p.3.

B.T.'s statement of "recording everyone" was a reference to four previous conversations B.T. had with other witnesses in the case, which he recorded.  B.T. referred to the recordings when talking to C.T. because he made the prior recordings with the intention of using them to extort $15,000 from Eric Tataw.

B.T. spoke with A.E. at some point before speaking with C.T.  Portions of the conversation are in Pidgin.  A copy of the Government's translation of the call are attached as Exhibit No. 2.  During the conversation, B.T. continues to ask questions to gain information about Eric Tataw.  Has "Eric given you any document?"  *Exhibit No.2, p. 1*.  Which "document did they give you?"  *Id*., p.2.  Later in the conversation, B.T.  informs A.E. that Eric is not an honest person.  *Id*., p.3.

Additionally, B.T. records two phone calls with M.A.   A transcript of the conversation is attached as Exhibit No. 3 as portions of the exchange are in Pidgin.  B.T. asks M.A., "Did they give you any documents?" *Exhibit No.3, p.1*.  The witness B.T. further demanded, "No tell me what he (referring to Eric Tataw) told you." *Id, p.2*.  Later in the conversation, B.T. reiterates, "Has he given you all the documents." *Id, p.4*.

A second recorded call between B.T. and M.A. was transcribed by the Government as portions of the exchange are in Pidgin.   The conversation begins with B.T. accusing Eric Tataw of unlawfully taking things from his home.  Much of the conversation is B.T. explaining his view on Eric Tataw's character flaws.  "He got hundreds of thousands of dollars and didn't even give me a dime." *Exhibit No. 4, p.1*.  "Eric made me sleep in jail." *Id., p.2*.  B.T.  goes on to reveal that he was hiding his true motives.  "I refused to give the impression we were teaming up against him.  You know Eric is smart he can get a lawyer for himself." *Id., p.5*.  Witness B.T.  recorded these calls with the intention of using them to later extort money from Eric Tataw.

B.T. also tape recorded a conversation between Eric Tataw and himself.  Portions of the conversations were in Pidgin.  The Government's translation is attached as Exhibit No. 5.  B.T. tells Eric Tataw, "You bother me, you know that.  I would like all of us to have one word.  I hope that what you told me, it's the same thing you told them." *Exhibit No. 5, p.2*.  B.T. says this despite the fact that Mr. Tataw did not mention any other person up to that point in the conversation.  B.T.

asks questions of Mr. Tataw about his paychecks.  "The first check I received was in January 2020, right?"  *Id.*, p.2.  "The next payment is the one you gave me right."  *Id.*   These leading questions were asked for the purpose of eliciting information from Mr. Tataw for B.T. to later use for requesting money from Mr. Tataw through his relative C.T.

Eric Tataw never knew or consented to recording this conversation.  Upon information and belief, A.E. and M.A. also never consented to the recording of their conversations with B.T.

## LEGAL STANDARD

"Few threats to liberty exist which are greater than that posed by the use of eavesdropping devices."  *Berger v. New York*, 388 U.S. 41, 63 (1967).  The State of Maryland for example demands that all parties agree to the recording of a communication, with certain limited exceptions, for the conduct of the recording to be legal.  Failure to comply with this all party consent requirement subjects the recording person to prosecution for a felony carrying a maximum penalty of five years of incarceration.  Md. Code Ann., Cts. & Jud. Proc. § 10-402.  In contrast, federal law requires only one party to the conversation to consent to the recording of any communication in most circumstances.  18 U.S.C. § 2511(2)(d).  However, there are important exceptions.  Any communications that are "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State" fall outside the protection of the law.  *Id*.

When assessing whether a violation of this section has occurred, courts assess whether the recording was intercepted "for the purpose of committing any criminal or tortious act."  18 U.S.C. § 2511(2)(d), *quoted in United States v. Jiau*, 734 F.3d 147, 151(2d. Cir. 2013).  In *Jiau*, the Second Circuit rejected the idea that any illegal subject matter of a recorded conversation automatically triggers the exception. *Id*. at 152. Instead, the focus is on whether the recording

4

party intended to use the recording to harm or injure another (e.g., to threaten, blackmail, or embarrass them), not merely that the conversation concerned criminal activity. *Id*. at 152. In assessing the motivation of the recording party, the intention to commit the crime or tort must be a primary motivation or a determinative factor in the party's action, but does not have to be the party's only motivating factor. *See United States v. Vest*, 639 F.Supp. 899, 904 (1986).

The remedy for recording a communication for the purpose of committing a tort or a crime is clearly established under federal law and is broad in scope. "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515

## ARGUMENT

The conduct of Government witness B.T. in recording the four conversations at issue in this motion, namely one conversation with A.E., two conversations with M.A., and one conversation with Mr. Tataw, was for the purpose of using those recordings to commit the tort and/or crime of extortion. As such the substance of these communications and any evidence derived from them should be precluded from use at trial.

The Hobbs Act, 18 U.S.C. § 1951, criminalizes the conduct B.T. exhibited during his call with C.T. and specifically precludes the taking of "property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Fear of economic harm can be a basis for violating this statute. *See United States v. Billups*,

692 F.2d 320, 330 (4th Cir. 1982) *cert. denied* 464 U.S. 820 (1983).  The test is resolved from the perspective of the victim of the extortion and whether the victim had a reasonable belief that the alleged extortionist had the power to exploit the victim.  *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213, 231 (S.D.N.Y. 1992) *affirmed* 99 F.3d 401 (2nd Cir. 1995).  Additionally, private civil claims in tort for attempted extortion are actionable in federal court under the Hobbs Act.  *See Hall American Center Associates Ltd. Partnership v. Dick,* 726 F. Supp. 1083 (1989).

The State of Maryland has criminalized similar conduct.  A person may not obtain, attempt to obtain, or conspire to obtain money, property, labor, services, or anything of value from another person with the person's consent, if the consent is induced by wrongful use of actual or threatened (including) economic injury.  Md. Code Ann., Crim. Law § 3-701.

The language used by witness B.T. in his phone call with C.T. is directed at Eric Tataw. B.T. directs C.T. to "Tell him" (Eric Tataw) about the recordings for the purpose of wrongfully eliciting $15,000 from Mr. Tataw.  It is clear from the call with C.T. that B.T.'s intention for recording the four phone calls at issue in this motion was to facilitate and form the basis of the extortion.  As such, pursuant to 18 U.S.C. § 2515, the Government should be precluded at the trial in this matter of introducing evidence of the recorded phone calls and any evidence derived from these calls.

### CONCLUSION

For the foregoing reasons, Eric Tataw moves to preclude the use of the four phone calls at issue in this motion at the trial of this case, requests a hearing on this motion, and any other and further relief that justice demands.

Respectfully submitted


_____/s/_____
DAVID WALSH-LITTLE, #23586
The Law Office of David Walsh-Little, LLC
1014 West 36th Street
Baltimore, Md 21211
Tel: 1.410.205.9337
Fax: 1.667.401.2414
Email: david@walshlittlelaw.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Motion was sent to all parties via

CM/ECF.


_____/s/_____
DAVID WALSH-LITTLE, #23586